UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFF OMDAHL, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>   v.<br><br>FARFETCH LIMITED, JOSE NEVES, ELLIOT JORDAN, FREDERIC COURT, DANA EVAN, JONATHAN KAMALUDDIN, RICHARD LIU, NATALIE MASSENET, JONATHAN NEWHOUSE, DANIEL RIMER, MICHAEL RISMAN, DAVID ROSENBLATT, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, ALLEN & COMPANY LLC, UBS SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., WELLS FARGO SECURITIES, LLC, COWEN AND COMPANY, LLC, and BNP PARIBAS SECURITIES CORP.,<br><br>       Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jeff Omdahl ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Farfetch Limited ("Farfetch" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Farfetch; and (c) review of other publicly available information concerning Farfetch.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Farfetch securities pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2018 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2. Farfetch is a technology platform that purports to be the only global luxury digital marketplace at scale that connects brands, retailers, and consumers

3. On September 24, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 50.88 million shares of Class A common stock at a price of $20.00 per share. The Company received proceeds of approximately $750.5 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to fund incremental growth and other general corporate purposes, including possible acquisitions.

4. On August 8, 2019, Farfetch reported a larger-than-expected loss of $89.6 million for second quarter 2019. The Company also announced a $675 million acquisition of New Guards Group and that its Chief Operating Officer had resigned.

5. On this news, the Company's share price fell $8.12, or over 44%, to close at $10.13 per share on August 9, 2019, on unusually heavy trading volume.

6. By the commencement of this action, the Company's stock was trading as low as $10.20 per share, a nearly 50% decline from the $20 per share IPO price.

7. The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that large scale online wholesale was reasonably likely to lead to pricing volatility and heavy promotions of luxury goods; (2) that the Company's core business was vulnerable to such pricing pressures; (3) that the Company would aggressively pursue acquisitions to remain profitable; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Jeff Omdahl, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Farfetch securities pursuant and/or

traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Farfetch is incorporated under the laws of the Cayman Islands with its principal executive offices located in London, England. Farfetch's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "FTCH."

15. Defendant Jose Neves ("Neves") was, at all relevant times, the Chief Executive Officer and a Director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Elliot Jordan ("Jordan") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Frederic Court ("Court") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Dana Evan ("Evan") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Jonathan Kamaluddin ("Kamaluddin") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant Richard Liu ("Liu") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21. Defendant Natalie Massenet ("Massenet") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22. Defendant Jonathan Newhouse ("Newhouse") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23. Defendant Daniel Rimer ("Rimer") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24. Defendant Michael Risman ("Risman") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25. Defendant David Rosenblatt ("Rosenblatt") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

26. Defendants Neves, Jordan, Court, Evan, Kamaluddin, Liu, Massenet, Newhouse, Rimer, Risman, and Rosenblatt are collectively referred to hereinafter as the "Individual Defendants."

27. Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO.

28. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.

29. Defendant Allen & Company LLC ("Allen") served as an underwriter for the Company's IPO.

30. Defendant UBS Securities LLC ("UBS") served as an underwriter for the Company's IPO.

31. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the Company's IPO.

32. Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") served as an underwriter for the Company's IPO.

33. Defendant Wells Fargo Securities, LLC ("Wells Fargo") served as an underwriter for the Company's IPO.

34. Defendant Cowen and Company, LLC ("Cowen") served as an underwriter for the Company's IPO.

35. Defendant BNP Paribas Securities Corp. ("BNP Paribas") served as an underwriter for the Company's IPO.

36. Defendants Goldman Sachs, J.P. Morgan, Allen, UBS, Credit Suisse, Deutsche Bank, Wells Fargo, Cowen, and BNP Paribas are collectively referred to hereinafter as the

"Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Farfetch securities issued in connection with the Company's IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Farfetch's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Farfetch shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Farfetch or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Farfetch; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

43. Farfetch is a technology platform that purports to be the only global luxury digital marketplace at scale that connects brands, retailers, and consumers.

### The Company's False and/or Misleading Registration Statement and Prospectus

44. On September 19, 2018, the Company filed its final amendment to the Registration Statement with the SEC on Form F-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on September 20, 2018.

45. On September 24, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 50.88 million shares of Class A common stock at a price of $20.00 per share. The Company received proceeds of approximately $750.5 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be

used to fund incremental growth and other general corporate purposes, including possible acquisitions.

46. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

47. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

48. As to the market for luxury goods, The Registration Statement stated that "the global market for personal luxury goods was estimated to reach a record high of $307 billion in 2017" and that "the online share of the global personal luxury goods market in 2017 was approximately 9%." Among the purported strengths that differentiated the Company, the Registration Statement stated, in relevant part:

> **Our marketplace business model.** Our model allows us to offer the broadest and deepest selection of luxury fashion available online globally, while incurring minimal inventory risk and without capital-intensive retail operations. This allows for low capital expenditures, favorable working capital dynamics, minimal inventory holding and an ability to drive stronger future margins than traditional inventory-taking business models. For the six months ended June 30, 2018, our Average Order Value was $622.1, and we had a 31.7% Third-Party Take Rate.

49. Under the Company's profitability, the Registration Statement stated, in relevant part:

> ***We may not be able to generate sufficient revenue to be profitable or to generate positive cash flow on a sustained basis, and our revenue growth rate may decline.***
>
> We cannot assure you that we will generate sufficient revenue to offset the cost of maintaining our platform and maintaining and growing our business. Although our revenue grew from $172.6 million for the six months ended June 30, 2017 to $267.5 million for the six months ended June 30, 2018, our revenue growth rate may decline in the future because of a variety of factors, including increased competition and the maturation of our business. We cannot assure you that our revenue will continue to grow or will not decline. You should not consider our

historical revenue growth or operating expenses as indicative of our future performance. If our revenue growth rate declines or our operating expenses exceed our expectations, our financial performance will be adversely affected.

***We have experienced losses in the past, and we may experience losses in the future.***

We experienced losses after tax of $29.3 million and $68.4 million in the six months ended June 30, 2017 and 2018, respectively, and losses after tax of $61.8 million, $81.5 million and $112.3 million in the years ended December 31, 2015, 2016 and 2017, respectively. We may continue to experience losses after tax in the future, and we cannot assure you that we will achieve profitability and may continue to incur significant losses in future periods.

50. Regarding acquisitions, the Registration Statement stated, in relevant part:

***We have acquired, and may continue to acquire, other companies or technologies, which could divert management's attention and otherwise disrupt our operations and harm our operating results. We may fail to acquire companies whose market power or technology could be important to the future success of our business.***

We have acquired and may in the future seek to acquire or invest in other companies or technologies that we believe could complement or expand our brand and products, enhance our technical capabilities, or otherwise offer growth opportunities. Pursuit of future potential acquisitions may divert the attention of management and cause us to incur various expenses in identifying, investigating, and pursuing suitable acquisitions, whether or not they are consummated. In addition, we may be unsuccessful in integrating our acquired businesses or any additional business we may acquire in the future, and we may fail to acquire companies whose market power or technology could be important to the future success of our business. For example, in 2015, we acquired Browns and in 2017, we acquired Fashion Concierge and Style.com.

We also may not achieve the anticipated benefits from any acquired business due to a number of factors . . . . In addition, a significant portion of the purchase price of companies we acquire may be allocated to acquired goodwill, which must be assessed for impairment at least annually. In the future, if our acquisitions do not yield expected returns, we may be required to take charges to our operating results based on this impairment assessment process.

51. The Registration Statement was materially false and misleading and omitted to state: (1) that large scale online wholesale was reasonably likely to lead to pricing volatility and heavy promotions of luxury goods; (2) that the Company's core business was vulnerable to such pricing pressures; (3) that the Company aggressively pursue acquisitions to remain profitable;

and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## The Subsequent Disclosures

52. On August 8, 2019, Farfetch reported a net loss of $89.6 million for second quarter 2019, a 406.9% increase over the prior year period. According to the press release, "[t]his was largely driven by a year-over-year increase in the operating loss from $36.8 million to $95.8 million." Moreover, Farfetch announced that its Chief Operating Officer had resigned.

53. The same day, the Company also announced the $675 million acquisition of New Guards Group, a brand platform for the design, production, and distribution of luxury brands. Farfetch had already acquired Stadium Goods, a sneaker and streetwear marketplace, for $250 million in December 2018 and Toplife, a luxury goods platform in China, for $50 million in February 2019.

54. In a conference call held the same day to discuss the second quarter 2019 financial results, Defendants Neves attributed the results to promotional discounts offered to compete with the heavy discounting by large online retailers. Moreover, Defendant Jordan stated that the competitive pressures were likely to continue for the next two to four quarters, and Defendant Neves stated that Farfetch would respond by "doubling down on e-concessions, reducing [its] promotional activities as [it] boost[s its] full prices by exciting collaborations with [its] brand partners with original content from New Guards." Defendant Jordan also stated that the promotional activity was across all markets, stating:

> As we were saying, it was the promotional environment really that it's across the board, and to sort of follow-up on one of the earlier questions, it wasn't in one particular market. It was pretty much global. With Europe, within Asia as well, we saw very, very heavy promotions, and obviously, we wanted to go toe-to-toe to be competitive for our customers, so it's very hard to unpack within that anything other than the competitors are really feeling it.

55. When an analyst questioned the strategy to acquire New Guards, Defendant Neves assured that it was a signal of the Company's success:

**Analyst:** The original idea of building an Uber of luxury and fashion, digital distribution, is it possibly the case that you're seeing this original model is not working and not producing enough of a profitability so that you have to complement it with other activities? Where is this logic coming from?

**Defendant Neves:** . . . The result of the success of our model is precisely why these very, very successful companies wants to partner with us. And when we see opportunities for making progress on our platform vision, we will seize them. We will seize them studiously, cautiously.

56. Similarly, analysts at Wells Fargo called the acquisition "curious" and stated that Farfetch's "story has changed meaningfully since the IPO" in a note that further stated:

While there are some interesting aspects about this acquisition (an asset-light business that's actually quite profitable, as it made $95 million of pretax income for the last 12 months on revenue of $345 million), it's also unclear how exactly this fits into Farfetch's business, as 95% of revenues come via wholesale/licensing, which adds even more revenue streams to an already dense business/financial model.

57. On this news, the Company's share price fell $8.12, or over 44%, to close at $10.13 per share on August 9, 2019, on unusually heavy trading volume.

58. By the commencement of this action, the Company's stock was trading as low as $10.20 per share, a nearly 50% decline from the $20 per share IPO price.

## FIRST CLAIM
### Violation of Section 11 of the Securities Act
### (Against All Defendants)

59. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

60. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

61. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

62. Farfetch is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

63. As issuer of the shares, Farfetch is strictly liable to Plaintiff and the Class for the misstatements and omissions.

64. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

65. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

66. Plaintiff acquired Farfetch shares pursuant and/or traceable to the Registration Statement for the IPO.

67. Plaintiff and the Class have sustained damages. The value of Farfetch Class A common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM
### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

68. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

69. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

70. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Farfetch within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause Farfetch to engage in the acts described herein.

71. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

72. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

CLASS ACTION COMPLAINT
11

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 17, 2019

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lportnoy@glancylaw.com

-and-

Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff Jeff Omdahl*

## SWORN CERTIFICATION OF PLAINTIFF

## FARFETCH LIMITED SECURITIES LITIGATION

I, Jeff Omdahl, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I am duly authorized to institute legal action Farfetch Limited and other defendants.

3. I did not purchase Farfetch Limited securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5. My transactions in Farfetch Limited securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

6. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

7. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

9/16/2019

Date

*DocuSigned by: Jeff Omdahl — 439F191B4720409...*

Jeff Omdahl

**Jeff Omdahl's Common Stock Transactions in Farfetch Limited (FTCH)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/21/2019 | Bought | 400 | $24.0000 |
| 8/13/2019 | Bought | 400 | $20.0000 |
| 8/20/2019 | Sold | -800 | $10.4800 |

**Jeff Omdahl's Transactions in Farfetch Limited Options**

| Date | Transaction Type | Contract Type | Exp / Strike | Quantity | Price |
|---|---|---|---|---|---|
| 5/7/2019 | Sold | Put | Jun 21, 2019 / $24 | -4 | $1.3100 |
| 6/26/2019 | Sold | Call | Aug 16, 2019 / $24 | -4 | $0.6000 |
| 7/2/2019 | Sold | Put | Aug 16, 2019 / $20 | -4 | $1.6800 |