# EXHIBIT 3

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## FORM 20-F

**(Mark One)**

☐ **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR (g) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2019

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

OR

☐ **SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

Date of event requiring this shell company report

Commission file number 001-38655

# Farfetch Limited

(Exact name of Registrant as specified in its charter)

**Not Applicable**
(Translation of Registrant's name into English)

**Cayman Islands**
(Jurisdiction of incorporation or organization)

**The Bower, 211 Old Street**
**London EC1V 9NR, United Kingdom**
(Address of principal executive offices)

**James L. Maynard**
**General Counsel & Executive Vice President Group Legal**
**Telephone: +44 (0) 20 7549 5900**
**Farfetch Limited**
**The Bower, 211 Old Street**
**London EC1V 9NR, United Kingdom**
(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

**Securities registered or to be registered, pursuant to Section 12(b) of the Act**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Class A ordinary shares, par value $0.04 per share | FTCH | New York Stock Exchange |

**Securities registered or to be registered pursuant to Section 12(g) of the Act: None**

**Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act: None**

Indicate the number of outstanding shares of each of the issuer's classes of capital stock or common stock as of the close of the period covered by the annual report.      296,740,928      Class A ordinary shares and 42,858,080 Class B ordinary shares

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒   No ☐

If this report is an annual or transition report, indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.   Yes ☐   No ☒

Note—Checking the box above will not relieve any registrant required to file reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 from their obligations under those Sections.

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files).   Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | ☒ | Accelerated filer | ☐ | Non-accelerated filer | ☐ | Emerging growth company | ☐ |
|---|---|---|---|---|---|---|---|

If an emerging growth company that prepares its financial statements in accordance with U.S. GAAP, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards † provided pursuant to Section 13(a) of the Exchange Act.   ☐

† The term "new or revised financial accounting standard" refers to any update issued by the Financial Accounting Standards Board to its Accounting Standards Codification after April 5, 2012.

Indicate by check mark which basis of accounting the registrant has used to prepare the financial statements included in this filing:

U.S. GAAP ☐     International Financial Reporting Standards as issued by the International Accounting Standards Board ☒     Other ☐

If "Other" has been checked in response to the previous question indicate by check mark which financial statement item the registrant has elected to follow.   Item 17 ☐   Item 18 ☐

If this is an annual report, indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

restrictive covenants that will limit our ability to engage in certain activities that are in our long-term best interest. For example, the Indenture limits our ability to incur additional indebtedness. We have not previously breached and are not in breach of any of the covenants under the Indenture; however our failure to comply with covenants in the Indenture or in agreements governing any future indebtedness could result in an event of default which, if not cured or waived, could result in the acceleration of all of our indebtedness.

*To service our indebtedness, we require cash, and our ability to generate cash is subject to many factors beyond our control.*

Our ability to make payments on and to refinance our existing and any future indebtedness, including the Notes, and to fund planned capital expenditures will depend on our ability to generate cash in the future. This is subject, to a certain extent, general economic, financial, competitive, regulatory and other factors that are beyond our control.

We cannot assure you that our business will generate sufficient cash flow from operations or that future borrowings will be available to us in an amount sufficient to enable us to pay our indebtedness or to fund our other liquidity needs. We may need to refinance all or a portion of our indebtedness on or before maturity, and we cannot assure you that we will be able to refinance any of our indebtedness on commercially reasonable terms or at all. Failure to refinance our indebtedness on terms we believe to be acceptable could have a material adverse effect on our business, financial condition, results of operations and cash flow.

**Item 4. Information on the Company**

**A. History and Development of the Company**

**Corporate Information**

We were incorporated as Farfetch Limited in the Cayman Islands on May 15, 2018 as an exempted company with limited liability under the Companies Law. Exempted companies are Cayman Islands companies whose operations are conducted mainly outside the Cayman Islands. Our principal executive offices are located at The Bower, 211 Old Street, London EC1V 9NR, United Kingdom. Our telephone number at this address is +44 (0) 20 7549 5900. Prior to our incorporation in the Cayman Islands, we conducted our business through Farfetch.com Limited, incorporated with limited liability under the laws of the Isle of Man with registered number 000657V, and its subsidiaries.

For a discussion of our principal capital expenditures, see Item 5. "Operating and Financial Review and Prospects — B. Liquidity and Capital Resources," Item 4. "Information on the Company — D. Property, Plant and Equipment" and Note 16 to our audited consolidated financial statements included elsewhere in this Annual Report.

Our agent for service of process in the United States is CT Corporation, whose address is 111 Eighth Avenue, New York, New York 10011.

The SEC maintains an Internet site that contains reports, proxy and information statements, and other information regarding issuers, such as the Company, that file electronically, with the SEC at www.sec.gov. Our website address is www.farfetchinvestors.com. The information contained on our website is not incorporated by reference in this document.

**Acquisition of Stadium Goods**

In January 2019, we completed the acquisition of 100% of the outstanding equity interests of Stadium Enterprises LLC, which does business as "Stadium Goods", a premium sneaker and streetwear marketplace, for the total consideration of $230.9 million. The consideration was split as $150.2 million of cash and 4.6 million Class A Ordinary Shares with a value of $80.7 million based on the Farfetch share price at the acquisition date. See Note 5 ("Business combinations") to our audited consolidated financial statements included elsewhere in this Annual Report.

**Acquisition of New Guards**

In August 2019, we completed the acquisition of 100% of the outstanding shares of New Guards Group Holding S.p.A, for the total consideration of $704.1 million. New Guards Group Holding S.p.A, is a platform that uses a single common infrastructure model to incubate and grow emerging talent into highly sought-after brands to our Group. New Guards is the parent company of subsidiaries that either own or are the exclusive licensee of global luxury fashion brands, including Off-White, Heron Preston and Palm Angels. The consideration was split between cash and Farfetch shares. Net of $102.8 million of acquired cash, total consideration included $256.1 million of cash consideration and 27.5 million Class A Ordinary Shares with a value of $345.2 million based on the Farfetch share price at the acquisition date. Purchase price allocations are expected to be completed in the first half of 2020, following customary adjustments.

**Segment Change**

Following the acquisition of New Guards, in the fourth quarter of 2019, management determined that it had three operating segments: (i) Digital Platform, (ii) Brand Platform and (iii) In-Store, given our new organizational structure and the manner in which our business is reviewed and managed. In fourth quarter 2019, we realigned our reportable operating segments to reflect how our Chief Operating Decision-Maker was making operating decisions, allocating resources and evaluating operating performance. See "Operating Results by Segment" and Note 6 ("Segmental and geographical information") to our audited consolidated financial statements included elsewhere in this Annual Report for additional information about these segments.

**B. Business Overview**

**Our Mission**

Farfetch exists for the love of fashion. We believe in empowering individuality. Our mission is to be the global platform for luxury fashion, connecting creators, curators and consumers.

**Overview**

Farfetch is the leading global platform for the luxury fashion industry.

Founded in 2007 by José Neves and launched in 2008, we began as an e-commerce marketplace for luxury boutiques around the world. With $2,140 million of GMV and over 2 million Active Consumers for the year ended December 31, 2019, Farfetch is the largest digital in-season luxury player in the industry. Farfetch's businesses include:

- **The Farfetch Marketplace** - the only global luxury marketplace at scale connecting, as of December 31, 2019, consumers in 190 countries with merchandise in over 50 countries from over 1,200 brands, boutiques and department stores from all over the world, delivering a unique shopping experience and access to the most extensive selection of luxury at a single destination.

- **Farfetch Platform Solutions (FPS)** – our white-label enterprise offering to the luxury industry, which builds and operates e-commerce and technology solutions for luxury brands and retailers, utilizing the proprietary Farfetch platform.

- **Farfetch Store of the Future** - our retail innovation arm, which develops and implements technology solutions to support the retail vision of brands and retailers in order to create new luxury experiences by seamlessly connecting the digital and physical with the customer at the center.

- **Browns** - an iconic British fashion and luxury goods retailer.

- **Stadium Goods** - a premium sneaker and streetwear marketplace connecting sneakerheads around the world with merchandise from consigners.

- **New Guards** – a platform that uses a single common infrastructure and model to incubate and grow emerging talent into highly sought-after brands. New Guards designs, manufactures and distributes sought-after luxury fashion brands including Off-White, Heron Preston, Palm Angels and Marcelo Burlon, among others.

We organize and report our business in three reportable operating segments: Digital Platform, Brand Platform and In-Store.

The Digital Platform segment activities include the Farfetch Marketplace, FPS, BrownsFashion.com, StadiumGoods.com, Farfetch Store of the Future, and any other online sales channel operated by the Group, including the respective websites of the brands in the New Guards portfolio. It derives its revenues mostly from transactions between sellers and consumers or customers conducted on our dematerialized platforms, and primarily operates a revenue share model where we retain commissions and related income from these transactions. The Digital Platform also includes direct-to-consumer sales of first-party and first-party own-inventory through Farfetch Marketplace, where we retains the full GMV.

The Brand Platform segment is comprised of design, production, brand development and wholesale distribution of brands owned and licensed by New Guards and includes franchised store operations.

The In-Store segment covers the activities of Group-operated stores including Browns, Stadium Goods and certain brands in the New Guards portfolio. Revenues are derived from sales made in these physical stores.

**The Farfetch Group**

Farfetch operates an omni-channel approach across the digital and physical realms to serve our mission to connect the world's creators, curators and consumers, as the leading global platform for the luxury fashion industry.



55

- **New Guards' platform proposition.** New Guards incubates and grows emerging talent into highly sought-after brands (including Off-White, Heron Preston and Palm Angels, among others) and provides us the ability to enhance the Farfetch Marketplace by offering exclusive access to merchandise from the New Guards portfolio of brands. New Guards operates as a platform, using a single common infrastructure and asset-light shared services model to procure manufacturing resources based on demand. Quantities are produced to-order, and as a consequence, New Guards is inventory-light.

**Our Growth Strategies**

The key elements of our growth strategies include:

- **Building the Farfetch brand.** While we have established a significant position in the fashion industry, we believe we have an opportunity to further increase market share by growing our brand awareness. We believe that with continued investment in brand marketing, data led insights and effective consumer targeting, we can expand and strengthen our reach. We are building a unique brand with strong cultural relevance by focusing our messaging on our "only on Farfetch" proposition while also providing our consumer with the most widely available range. This is reinforced by our acquisitions of Stadium Goods and New Guards which further enable us to offer the broadest selection of luxury brands and most sought after product together with exclusive access to merchandise from the New Guards portfolio of existing, and any new, brands.

- **Improving consumer economics and growing the Farfetch Marketplace consumer base**

  *Increasing the lifetime value of existing consumers.* We have cultivated our consumer base and have strong consumer loyalty. We are committed to ensuring that through our curated supply, as well as our comprehensive approach to data and analytics, we are able to offer our existing consumers the merchandise that they want. We will seek to continue to refine our approach to data analytics, allowing us to further optimize and improve our marketing approach and customer experience, with the objective that existing consumers visit the Farfetch Marketplace more often, convert more efficiently and have higher Average Order Values. Our strategy also includes optimizing our private client offering.

  *Attracting new consumers.* We are focused on growing our consumer base in all markets, with a particular emphasis on emerging markets including China, the Middle East, Latin America and Eastern Europe. Our expansion strategy includes offering consumers global access to luxury merchandise that is tailored to local market trends and tastes, along with localized interfaces. For example, the rapidly growing luxury industry in China represents a major opportunity for us, and we have invested in people and technology locally to support growth. We are one of the very few Western e-commerce companies which has demonstrated success in penetrating China, an important and growing market for luxury, whose consumer base, according to Bain, is expected to grow to represent 45% of luxury sales by 2025. We have local operations in China, including customer service, localized website and apps, local servers and locally managed WeChat stores and WeChat Mini Programs, and have implemented an effective cross-border solution which includes customs clearance to best serve the Chinese luxury consumer. In 2019 we completed the acquisition of JD.com's 'Toplife', obtaining 'Level One' access on the JD.com app.

- **Increasing product supply and our luxury seller base for the Farfetch Marketplace**

  *Increasing supply from existing luxury sellers.* We believe that we can increase the depth of our supply from our existing luxury seller base. We are seeing luxury sellers making available more of their inventory on the Farfetch Marketplace and we continue to evolve our value proposition, including data led insights, access to relevant demand and technological innovation.

  *Adding brands, boutiques, department stores and other partners.* We plan to increase the number of brands, boutiques and department stores and new types of retailers in order to expand the assortment and availability of merchandise on the Farfetch Marketplace.

*Developing brands of the future.* With the acquisition of New Guards in August 2019, we have added to our portfolio of businesses a platform for the creation, design, production and distribution of luxury "brands of the future." The New Guards acquisition gives us access to a portfolio of profitable brands, and resources and capabilities to launch successful new brands.

*Expanding into new categories and offerings.* We aim to enhance our product offering for consumers and create additional opportunities for sellers on the Farfetch Marketplace by expanding into other luxury categories and offerings, such as the expansion of our offering to include watches and fine jewelry in 2018 (which has grown faster than the overall Farfetch Marketplace in 2019 by GMV) and our investment in the streetwear category through our acquisition of Stadium Goods in January 2019. According to Bain, streetwear has been one of the growing categories in the luxury market, and Stadium Goods is largely incremental to our business. Our ability to expand into adjacent categories within the personal luxury goods market will enable us to increase our penetration of a large and robust total addressable market.

- **Investing in our platform with new technologies and innovation.** We intend to continue to invest in people, product and infrastructure to drive technological innovation in the luxury industry. This includes continuing to enhance our platform for all participants through the application of data science and machine learning technologies to facilitate further personalization and inspiring moments for consumers. We also expect to continue to grow FPS and further develop and monetize Farfetch Store of the Future. We may supplement the growth of our internal service offerings with external third party providers that can build on our digital platform to offer complementary services to our consumers and luxury sellers.

- **Maximizing the synergies between our business units.** We will continue to prioritize investing in the growth of our organically developed businesses and targeted acquisitions in a manner that maximizes synergistic effects. This means strategically driving interactions between the Farfetch Marketplace, Browns, Stadium Goods, New Guards, FPS and Farfetch Store of the Future to optimize supply, develop and promote exclusive merchandise, build our brands and leverage our technology platform and logistics capabilities.

**Our Businesses**

**Our Marketplaces**

*The Farfetch Marketplace*

The Farfetch Marketplace is the largest digital luxury marketplace in the world, connecting two sides of the luxury fashion market: consumers from 190 countries and luxury sellers in over 50 countries.

For consumers, we provide curated access to, as of December 31, 2019, over 3,400 different brands from over 1,200 luxury sellers. Consumers are able to engage with us across our website and iOS and Android apps, including on our iOS app developed specifically for our consumers in China.

For luxury sellers we facilitate connection to 2.1 million Active Consumers, as of December 31, 2019. We believe the Farfetch Marketplace is the sole global in-season multi-brand luxury platform that can offer brands direct-to-consumer distribution via an e-concession model. The proposition for brands includes full control over merchandising and pricing together with higher margins than wholesale distribution.

The Farfetch Marketplace provides integrated logistics for luxury sellers, including content creation and end to end logistics and a localized luxury experience and customer care for the Farfetch Marketplace consumers. In-house content creation allows us to achieve a luxury product presentation with a consistent look and feel, with short lead times and low cost. Our content creation process includes styling, photographing, photo-editing and content management. We have invested significant resources in developing our fully integrated logistics network. We have developed smart supply chain algorithms that are built around deep information sharing which make our supply chain scalable, capital efficient and highly agile.

In 2019 we added localized sites for the Netherlands, Sweden and Denmark, bringing our total to 48 localized sites available in 15 languages.

*Stadium Goods Marketplace*

Stadium Goods is a premium sneaker and streetwear marketplace specializing in new, never worn, merchandise for resale. Farfetch acquired Stadium Goods in January 2019 and it continues to operate as a standalone brand, increasingly leveraging Farfetch's digital platform and expertise in technology, logistics, data, brand, marketing and geographic reach.

Stadium Goods operates an online marketplace (stadiumgoods.com) and iOS and Android apps. Stadium Goods' stock is also available through third-party platforms including Amazon and eBay and is fully integrated into and available on the Farfetch Marketplace in all geographies. Stadium Goods has a brick-and-mortar store in the heart of New York City's Soho neighborhood, and has announced plans to open its second store in Chicago in 2020.

**Our Enterprise Solutions**

*Farfetch Platform Solutions*

FPS is our enterprise offering to the luxury fashion industry, offering a modular suite of white-label technology solutions and services for luxury sellers. FPS delivers global, multi-channel e-commerce solutions that enable retailers and brands to drive growth and innovation, seamlessly interact with their customers, build stronger and closer relationships while allowing them to focus on the creative aspects of their businesses. These solutions are built on the Farfetch digital platform, providing the same capabilities and reach as the Farfetch Marketplace, and benefitting from innovations and product developments on our digital platform. FPS partners can choose from specific features or bundles of products and services or a full end-to-end e-commerce experience, tailored to their customer and business requirements.

By building on our fully API-enabled digital platform, partnering with FPS allows for a flexible front-end suite of products, comprising global websites, apps, WeChat stores and a shop-floor app, which helps in-store staff manage global inventory to enhance customer service in-store. Our back-end infrastructure allows retailers and brands to synchronize their websites in real time with in-store and warehouse inventory, both from mono-brand stores and other suppliers in their distribution network, and facilitate customer-friendly services such as in-store pick-up and returns.

In July 2018, Farfetch acquired CuriosityChina, a business that focuses on amplifying premium and luxury brands across digital platforms in China. CuriosityChina augments the FPS proposition to include plug-and-play access for luxury brands to expand rapidly in China via web, app, WeChat Store and WeChat Mini Programs.

FPS currently works with a number of brands across the luxury fashion industry. In 2019, FPS added Emilio Pucci, Phillip Lim and, Nicholas Kirkwood as clients. In February 2020, FPS launched a new global e-commerce platform for Harrods. Our strategic partnership allows Harrods to use and benefit from all of FPS's core components, including e-commerce management, operations, international logistics, and technical support.

In addition, the Browns and Off-White e-commerce channels are powered and operated by FPS, and we intend to take this approach with other brands in the New Guards portfolio.

*Augmented Retail and Farfetch Store of the Future*

We believe the future of luxury fashion retail will be defined by the reinvention of the customer experience, through online and offline integrations. We call this vision Augmented Retail, taking the magic of the physical store experience and bringing it together with the advantages of the online and digital experience, underpinned by the use of data.

**D. Employees**

**Our People**

As of December 31, 2019, we had a total of 4,532 employees, which included 231 Browns, 184 Stadium Goods and 262 New Guards employees, and we had an additional 134 people working pursuant to freelance and consultancy contracts. Our employees are based in 14 countries, and 51% of our employees were female and 49% were male as of December 31, 2019. The table below sets out the number of employees by geography.

| **Geography** | As of December 31, 2019 |
|---|---:|
| Portugal | 2,304 |
| United Kingdom | 875 |
| United States | 411 |
| Mainland China | 336 |
| Italy | 251 |
| Brazil | 122 |
| Russia | 63 |
| Japan | 60 |
| Hong Kong | 50 |
| United Arab Emirates | 44 |
| India | 8 |
| France | 6 |
| Mexico | 1 |
| Australia | 1 |
| **Total** | **4,532** |

As of December 31, 2019, approximately 32% of our workforce consisted of technology and product specialists. The remainder was focused on all other business areas, including marketing, operations, production and other commercial and support functions. The table below sets out the number of employees, by category, as of December 31, 2019, 2018 and 2017:

| **Department** | As of December 31, 2017 | As of December 31, 2018 | As of December 31, 2019 |
|---|---:|---:|---:|
| Technology and Product | 802 | 1,241 | 1,465 |
| Operations | 759 | 1,017 | 1,801 |
| Browns | 133 | 177 | - |
| Marketing | 157 | 207 | 222 |
| Commercial | 114 | 146 | 213 |
| People | 100 | 125 | 184 |
| Finance and Legal | 95 | 130 | 233 |
| Data Department | - | - | 92 |
| Other | 127 | 189 | 322 |
| **Total** | **2,287** | **3,232** | **4,532** |

We believe that we maintain a good working relationship with our people, and we have not experienced any significant labor disputes or any difficulty in recruiting staff for our operations. Our employees are not represented by any collective bargaining agreements or labor unions, other than our employees in Brazil who are represented by two state-level labor unions, as required by law.

**E. Share Ownership**

For information regarding the share ownership of directors and officers, see "Item 7. Major Shareholders and Related Party Transactions – A. Major Shareholders." For information as to our equity incentive plans, see "Item 6. Directors, Senior Management and Employees – B. Compensation – Long-Term Incentive Plans."

**Item 7. Major Shareholders and Related Party Transactions**

**A. Major Shareholders**

The following table sets forth information relating to the beneficial ownership of our Class A ordinary shares and Class B ordinary shares as of January 31, 2020, for:

(a) each person, or group of affiliated persons, known by us to beneficially own 5% or more of our outstanding Class A ordinary shares or Class B ordinary shares;

(b) each of our current executive officers and our directors; and

(c) all of our current executive officers and our directors as a group.

For further information regarding material transactions between us and principal shareholders, see "Related Party Transactions" below.

The number of Class A ordinary shares and/or Class B ordinary shares beneficially owned by each entity, person, executive officer or Board member is determined in accordance with the rules of the SEC, and the information is not necessarily indicative of beneficial ownership for any other purpose. Under such rules, beneficial ownership includes any shares over which the individual has sole or shared voting power or investment power as well as any shares that the individual has the right to acquire within 60 days of January 31, 2020 through the exercise of any option, warrant or other right and the release of restricted linked ordinary shares. Except as otherwise indicated, and subject to applicable community property laws, the persons named in the table have sole voting and investment power with respect to all Class A ordinary shares or Class B ordinary shares held by that person.

Unless otherwise indicated below, the address for each beneficial owner listed is c/o Farfetch Limited, The Bower, 211 Old Street, London EC1V 9NR, United Kingdom.

| Name of beneficial owner | Class A ordinary shares | | Class B ordinary shares (1) | | Combined voting power (2) |
|---|---|---|---|---|---|
| | Number | Percent | Number | Percent | |
| *Holders of 5% or Greater* | | | | | |
| Kadi Group Holding Limited (3) | 42,366,665 | 14.3% | - | - | 3.7% |
| Morgan Stanley (4) | 38,984,008 | 13.1% | - | - | 3.4% |
| Index Ventures V (Jersey), L.P. (5) | 27,780,375 | 9.4% | - | - | 2.4% |
| Farhold (Luxembourg) (6) | 19,047,241 | 6.4% | - | - | 1.7% |
| Tybourne Capital Management (HK) Limited (7) | 18,071,377 | 6.1% | - | - | 1.6% |
| *Executive Officers and Directors* | | | | | |
| José Neves (8) | 2,191,076 | * | 42,858,080 | 100% | 74.3% |
| Elliot Jordan (9) | 725,836 | * | - | - | * |
| Stephanie Phair (10) | 490,348 | * | - | - | * |
| Dana Evan (11) | 686,875 | * | - | - | * |
| Jon Kamaluddin (12) | 302,985 | * | - | - | * |
| Dr. Jon Jainwen Liao, Ph.D. (13) | - | * | - | - | * |
| Natalie Massenet (14) | 788,460 | * | - | - | * |
| Danny Rimer (15) | - | * | - | - | * |
| Mike Risman (16) | - | * | - | - | * |
| David Rosenblatt (17) | 295,211 | * | - | - | * |
| Executive officers and directors as a group (10 persons) (18) | 5,480,791 | 1.8% | 42,858,080 | 100% | 74.5% |

| | |
|---|---|
| * | Indicates beneficial ownership of less than 1% of the total outstanding Class A ordinary shares. |
| (1) | The Class B ordinary shares are exchangeable for Class A ordinary shares on a one-for-one basis, subject to customary conversion rate adjustments for share splits, share dividends and reclassifications. Beneficial ownership of Class B ordinary shares reflected in this table has not also been reflected as beneficial ownership of Class A ordinary shares for which such Class B ordinary shares may be exchanged. |
| (2) | The percentage reported under "Combined Voting Power" represents the voting power with respect to all of our Class A and Class B ordinary shares outstanding as of January 31, 2020, voting as a single class. Holders of our Class A ordinary shares are entitled to one vote per share, and holders of our Class B ordinary shares are entitled to 20 votes per share. |
| (3) | Based on information reported on a Schedule 13G filed on November 27, 2018, each of Kadi Group Holding Limited, JD.com Investment Limited and JD.com, Inc. have shared voting power and shared dispositive power over 42,366,665 of our Class A ordinary shares. All shares of Kadi Group Holding Limited are directly held by JD.com Investment Limited, and all shares of JD.com Investment Limited are directly owned by JD.com, Inc. The business |

98

address of Kadi Group Holding Limited is Geneva Place, Waterfront Drive, P.O. Box 3469, Road Town, Tortola, British Virgin Islands. The business address of JD.com, Inc. is 20th Floor, Building A, No. 18 Kechuang 11 Street, Yizhuang Economic and Technological Development Zone, Daxing District, Beijing 101111, The People's Republic of China. The business address of JD.com Investment Limited is Offshore Incorporations Centre, P.O. Box 957, Road Town, Tortola, British Virgin Islands.

(4) Based on information reported on a Schedule 13G/A filed on February 14, 2020, Morgan Stanley has shared voting power over 31,251,334 of our Class A ordinary shares and shared dispositive power over 38,984,008 of our Class A ordinary shares, Morgan Stanley Asia Limited has shared voting power over 6,952,188 of our Class A ordinary shares and shared dispositive power over 13,580,101 of our Class A ordinary shares and Morgan Stanley Investment Management Inc. has shared voting power over 24,299,146 of our Class A ordinary shares and shared dispositive power over 25,403,907 of our Class A ordinary shares. The business address of Morgan Stanley and Morgan Stanley Investment Management Inc. is 1585 Broadway New York, NY 10036. The business address of Morgan Stanley Asia Limited is Level 46 International Commerce Centre 1 Austin Road West, Kowloon.

(5) Based on information reported on a Schedule 13G filed on February 12, 2019, Index Ventures V (Jersey), L.P. has sole investment and dispositive power over 27,780,375 or our Class A ordinary shares, Yucca (Jersey) SLP has sole investment and dispositive power over 354,500 of our Class A ordinary shares and Index Ventures V Parallel Entrepreneur Fund (Jersey) L.P. has sole investment and dispositive power over 225,055 of our Class A ordinary shares. Index Venture Associates V Limited ("IVA V") is the general partner of Index Ventures V (Jersey) L.P. and Index Ventures V Parallel Entrepreneur Fund (Jersey) L.P. (together, the "Index V Funds") and may be deemed to beneficially own the Class A shares held by the Index V Funds. Yucca (Jersey) SLP administers the investment vehicle that is contractually required to mirror the Index V Funds' investments, therefore, IVA V may be deemed to beneficially own the Class A ordinary shares held by Yucca (Jersey) SLP. The principal address of the Index V Funds and Yucca (Jersey) SLP is 44 Esplanade, St Helier, Jersey JE4 9WG, Channel Islands.

(6) Based on information reported on a Schedule 13G/A filed on February 10, 2020, each of Farhold (Luxembourg) S.à r.l., Vitruvian II Luxembourg S.à r.l., VIP II Nominees Limited and Vitruvian Partners LLP has shared voting and dispositive power over 19,047,241 of our Class A ordinary shares. All shares of Farhold (Luxembourg) S.à r.l. are owned by Vitruvian II Luxembourg S.à r.l. VIP II Nominees Limited, in its capacity as nominee for and on behalf of certain English limited partnerships (collectively, the "VIP II Funds"), is the sole shareholder of Vitruvian II Luxembourg S.à r.l. Vitruvian Partners LLP manages each of the VIP II Funds as its general partner and investment manager and is the sole shareholder of VIP II Nominees Limited. The business address of Farhold (Luxembourg) S.à r.l. and Vitruvian II Luxembourg S.à r.l. is 21, rue Philippe II, L-2340 Luxembourg. The business address of VIP II Nominees Limited and Vitruvian Partners LLP is 105 Wigmore Street, London, W1U 1QY, United Kingdom.

(7) Based on information reported on a Schedule 13G filed on February 14, 2020, each of Tybourne Capital Management (HK) Limited ("Tybourne HK"), Tybourne Capital Management Limited ("Tybourne Cayman"), Tybourne Kesari Limited ("Tybourne Kesari") and Viswanathan Krishnan ("Mr. Krishnan") has shared voting and dispositive power over 18,071,377 of our Class A ordinary shares. The Class A ordinary shares are held for the accounts of private investment funds for which Tybourne HK serves as the investment advisor. Tybourne Cayman serves as the manager to Tybourne Master Fund and the parent of Tybourne HK. Tybourne Kesari is the parent of Tybourne Cayman. Mr. Krishnan is the principal and sole shareholder of Tybourne Kesari. In such capacities, Tybourne HK, Tybourne Cayman, Tybourne Kesari and Mr. Krishnan may be deemed to have voting and dispositive power over securities held for the private investment funds. The address of the principal business office of each Tybourne HK and Mr. Krishnan is 30/F, AIA Central, 1 Connaught Road Central, Hong Kong, K3. The address of the registered office of each Tybourne Cayman and Tybourne Kesari is 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

(8) As to the number and percentage reflected under the columns "Class A Ordinary Shares," represents for Mr. Neves (a) 426,863 Class A ordinary shares and (b) 1,764,213 Class A ordinary shares underlying options and restrictive stock units ("RSUs") that are currently vested and exercisable or that vest within 60 days of January 31, 2020. As to the number and percentage reflected under the columns "Class B Ordinary Shares," represents for Mr. Neves 42,858,080 Class B ordinary shares held by TGF Participations Limited. José Neves exercises voting and investment power over the Class B ordinary shares held by TGF Participations Limited and may be deemed to have beneficial ownership those Class B ordinary shares. The business address of TGF Participations Limited is Grosvenor House, 66-67 Athol Street, Douglas, Isle of Man IM1 1JE. The amounts reported in the table above do not include 147,160 Class A ordinary shares underlying vested stock option held by Mr. Neves' spouse over which Mr. Neves may be deemed to have beneficial ownership but as to which Mr. Neves disclaims such beneficial ownership.

(9) Represents for Mr. Jordan (a) 500,056 Class A ordinary shares and (b) 225,780 Class A ordinary shares underlying options and RSUs that are currently vested and exercisable or that vest within 60 days of January 31, 2020.

(10) Represents for Ms. Phair (a) 263,360 Class A ordinary shares and (b) 226,988 Class A ordinary shares underlying options and RSUs that are currently vested and exercisable or that vest within 60 days of January 31, 2020.

(11) Represents for Ms. Evan (a) 10,000 Class A ordinary shares and (b) 676,875 Class A ordinary shares underlying options that are currently vested and exercisable or that vest within 60 days of January 31, 2020.

(12) Includes for Mr. Kamaluddin (a) 164,034 Class A ordinary shares and (b) 138,951 Class A ordinary shares underlying options that are currently vested and exercisable.

(13) Dr. Liao is an employee of JD.com and has no voting or dispositive power over the shares beneficially owned by JD.com.

(14) Represents for Ms. Massenet (a) 150,000 Class A ordinary shares and (b) 638,460 Class A ordinary shares underlying options that are currently vested and exercisable.

(15) Mr. Rimer is a partner within the Index Ventures group. Advisors within the Index Ventures group provide advice to the Index Funds. Mr. Rimer is involved in making recommendations to the Index Funds but does not hold voting or dispositive power over the Class A ordinary shares held by the Index Funds. See footnote 4 above.

(16) Mr. Risman is the Managing Partner and founding member of Vitruvian Partners LLP, which manages funds that are beneficial holders of our Class A ordinary shares. Based on a Schedule 13G/A filed on February 14, 2020, Mr. Risman does not hold voting or dispositive power over the Class A ordinary shares held by Vitruvian Partners LLP or its funds. See footnote 6 above.

(17) Represents for Mr. Rosenblatt (a) 81,916 Class A ordinary shares and (b) 213,295 Class A ordinary shares underlying options that are currently vested and exercisable. The amounts reported in the table above do not include 18,000 Class A ordinary shares held by Mr. Rosenblatt's spouse over which Mr. Rosenblatt may be deemed to have beneficial ownership but as to which Mr. Rosenblatt disclaims such beneficial ownership.

(18) Includes 3,884,562 Class A ordinary shares underlying options and RSUs that are, as applicable, currently vested and exercisable or that vest within 60 days of January 31, 2020.

To our knowledge, other than as provided in the table above, our other filings with the SEC and public disclosure and this Annual Report, there has been no significant change in the percentage ownership held by any major shareholder since January 1, 2017.

As of January 31, 2020, there were 297,017,774 of our Class A ordinary shares outstanding. To our knowledge, 170,986,266 Class A ordinary shares, representing approximately 57.6% of our total outstanding Class A ordinary shares, were held by 20 record shareholders with registered addresses in the United States.